## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SHIRE LABORATORIES INC., | : | Civil Action No. 03-4436 (MLC) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **M E M O R A N D U M** |
| | : | **O P I N I O N** |
| NOSTRUM PHARMACEUTICALS, INC., | : | |
| | : | |
| Defendant | : | |
| _____ | : | |

**HUGHES, U.S.M.J.**

This matter comes before the Court upon Motion by Plaintiff, Shire Laboratories, Inc.

("Plaintiff"), to Disqualify the law firm of Kenyon & Kenyon LLP ("Kenyon"), counsel for the

Defendant in this case.  Defendant Nostrum Pharmaceuticals, Inc. ("Defendant") opposes the

Motion.  The Court reviewed the written submissions of the parties and conducted oral argument

on June 20, 2006.  For the reasons that follow, Defendant's Motion to Disqualify the law firm of

Kenyon & Kenyon is denied.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a pharmaceutical company that markets Adderall XR® and Carbatrol®.

Adderall XR® is used for the treatment of attention deficit hyperactivity disorder and Carbatrol®

is used for the treatment of epilepsy and trigeminal neuralgia.  Defendant seeks approval to

market a generic version of Carbatrol®.  On September 18, 2003, Plaintiff filed a Complaint

against Defendant to prevent Defendant from marketing a generic version of Carbatrol®.

1

In a prior lawsuit, Plaintiff filed a patent infringement lawsuit in the District of Delaware against Impax Laboratories, Inc. ("Impax") which sought approval to market a generic version of Adderall XR®.  (Huag Decl. at ¶ 2.)  Kenyon represented Impax and Frommer Lawrence and Haug, LLP ("FLH") represented Plaintiff in the Delaware litigation.  *Id.*  On January 19, 2006, Impax and Plaintiff settled the Delaware litigation and entered into a Promotional Service Agreement ("PSA") through which Impax would allocate funds towards the promotion of Plaintiff's manufactured Carbatrol®. *Id.* at ¶ 4. As a result, Plaintiff and Impax have a joint interest in the promotion and sale of Carbatrol®.  At least four Kenyon employees participated in the PSA settlement negotiations, including Philip J. McCabe, Esquire, Meg Snowden, Esquire, Arthur Hoag, Esquire and Edward H. Haug, Esquire.  *Id.*

Kenyon and FLH provided contradictory accounts as to whether confidential information was exchanged during PSA settlement negotiations.  Mr. Haug, lead council for Plaintiff in the Delaware litigation, alleged that he discussed the matter before this Court with Mr. McCabe and Ms. Snowden.  *Id.* at ¶ 5.  In addition, he alleged that he disclosed confidential information regarding the Carbatrol® generic market, including the timing for potential generic entry.  *Id.* at ¶ 7.  Mr. McCabe, however, recalled no such discussion.  (McCabe Decl. at ¶ 4.)  Plaintiff was unaware that Kenyon was considering representing a generic producer of Carbatrol® during PSA settlement negotiations.  (Huag Decl. at ¶ 9.)  Kenyon continues to represent Impax but not in regards to Carbatrol®.  (McCabe Decl. at ¶ 7.)

On May 25, 2006, Defendant filed a Motion for admission *pro hac vice* for Kenyon attorneys Richard L. DeLucia, Esquire, and Michael P. Hogan, Esquire to appear before this

Court in the above captioned case.  On June 5, 2006, Plaintiff filed a Cross-Motion to Disqualify

Kenyon.  Plaintiff alleges that Defendant's launch of a generic version of Carbatrol® could injure

Plaintiff's and Impax's financial interest in the PSA from the Delaware litigation.  In addition,

because Kenyon was present at PSA settlement negotiations, Plaintiff alleges that Kenyon will

not be able to represent Defendant without relying upon confidential information adverse to

Plaintiff from the Delaware litigation.

### A.  Plaintiff's Motion to Disqualify the Law Firm of Kenyon & Kenyon from Representing Defendant.

The Rules of Professional Conduct ("RPC"), as adopted by the New Jersey Supreme

Court, govern attorney conduct in this Court.  L. Civ. R. 103.1.  Plaintiff argues that Kenyon's

representation of Defendant is a violation of the RPC 1.7 which states that " . . . a lawyer shall

not represent a client if the representation involves a concurrent conflict of interest. . . ."  Pl.'s

Br. at 4.  Plaintiff notes that New Jersey law permits a concurrent conflict of interest if "each

affected client gives informed consent, confirmed in writing, after full disclosure," RPC

1.7(b)(1).  *Id.* at 4.  Plaintiff reasons that RPC 1.7(b)(1) prohibits Kenyon's representation of

Defendant because Impax did not provide informed consent, either verbal or written.  *Id.* at 4.

Plaintiff also notes that RPC 1.7(c) used to prohibit successive representations which

created "an appearance of impropriety" as an "ordinary knowledgeable citizen acquainted with

the facts would conclude."  RPC 1.7 was recently amended and the "appearance of impropriety"

language was removed.  As a result, Plaintiff argues that although there is little case law on the

issues presented in this matter, a plain reading of the revised RPC 1.7 provides support for the

argument that Kenyon cannot represent Defendant because of a conflict of interest.  *Id.* at 5.

In addition, Plaintiff argues that Kenyon's representation of Defendant is "materially limited" by Kenyon's prior representation of Impax in the Delaware litigation. Plaintiff's position rests in large part on the assertion that Kenyon cannot represent Defendant without "considering, relying upon, and potentially disclosing" confidential information from the Delaware litigation. They further assert that Kenyon's representation of Defendant could injure Impax's financial interests in the PSA. *Id.* at 5-6.

Finally, Plaintiff argues that Kenyon should be disqualified, rather than just the individual lawyer associated with the Delaware litigation, because Kenyon is in violation of RPC 1.10(a) which imputes any conflict of interest of the individual lawyer to the entire law firm. *Id.* at 6.

### B. Defendant's Opposition to the Motion

Defendant argues that Plaintiff does not have standing to disqualify Kenyon because Plaintiff is not a current or former client of Kenyon. Def.'s Br. at 3. Defendant further argues that disqualification is a severe measure that should only be used "when absolutely necessary" *Id.* at 1 (*citing Rohm & Haas Co. v. American Cyanamid Co.,* 187 F.Supp.2d 221, 226(D.N.J. 2001)). Defendant reasons that disqualification is not "absolutely necessary" in this case because the participation of Kenyon will not impede the integrity of the proceedings. *Id.*

In addition, Defendant asserts that Kenyon's representation of Defendant is not a violation of RPC 1.7 because Defendant is not "directly adverse" to Impax. *Id.* at 11. Impax has no ownership right to Carbatrol® and is only a distributor. Defendant also contends that Kenyon's representation of Defendant is not "directly adverse" because "simultaneous

4

representation in unrelated matters of clients whose interests are only economically adverse . . .

does not ordinarily constitute a conflict of interest." *Id.* at 12 (*citing* ABA Model RPC 1.7, cmt

6.)  Defendant reasons that if economic interest qualifies as "directly adverse" under RPC 1.7,

Kenyon would be disqualified from representing all companies that profit from Carbatrol®

making the application of Rule 1.7 unmanageable.  *Id.*

Finally, Defendant contends that Kenyon will not be "materially limited" in providing

both Defendant and Impax with "the full range of advice and counsel needed" because there are

no issues in common and Kenyon does not represent Impax in regards to Carbatrol®.  *Id.* at 15-

16.  Defendant argues that law firms frequently deal with knowledge of a client's confidential

information that can be beneficial to another client, and that it does not raise a conflict.  *Id.* at 19.

Finally, Defendant claims that there was no expectation of confidentiality during settlement

negotiations, because the parties were bargaining as adversaries.  *Id.* at 20.

## II.   <u>DISCUSSION AND ANALYSIS</u>

Disqualification of a law firm is a serious measure not looked upon favorably by the

courts.  *Carlyle Towers Ass'n Inc. v. Crossland Sav.*, 944 F. Supp. 341, 345 (D.N.J. 1996).

"Motions to disqualify are viewed with 'disfavor' and disqualification is considered a 'drastic

measure' which courts should hesitate to impose except when absolutely necessary."  *Id.*

(*quoting Alexander v. Primerica Holdings, Inc.,* 822 F.Supp. 1099, 1114 (D.N.J. 1993).  Thus,

"the party seeking disqualification must carry a 'heavy burden' and must meet a 'high standard

of proof' before a lawyer is disqualified."  *Id.*  In the present case, the Plaintiff carries the

burden.

In determining whether Defendant's law firm should be disqualified, the Court must weigh the hardship to the client with its obligation to uphold the integrity of the claims. *Id.* "Resolution of a motion to disqualify requires the court to balance 'the need to maintain the highest standards of the [legal] profession' against 'a client's right to freely chose his counsel.'" *Steel v. General Motors Corp.,* 912 F.Supp. 724, 733 (D.N.J. 1995).

The RPC governs the conduct of attorneys admitted to this Court. L. Civ. R. 103.1(a). Plaintiff moves to disqualify Kenyon on grounds that its representation of Defendant violates RPC 1.7. RPC 1.7 precludes an attorney from representing parties with directly adverse interests and encourages the open exchange of confidential information between attorney and client. "The underlying rules relating to attorney conflicts of interest are designed to allay any apprehension a client may have in frank discussion of confidential information with his attorney." *In re Yarn Processing Patent Validity Litig. v. Leesona Corp.*, 530 F.2d 83, 90. In addition, RPC 1.7 "arises out of a fundamental proposition that an attorney owes a duty of undivided loyalty to his or her client." *Manoir-Electroalloys Corp. v. Amalloy Corp.*, 711 F.Supp. 188, 192. Further, "it is unethical conduct for an attorney to participate in any lawsuit against his own client without the knowledge and consent of all concerned." *Id.* (quoting *Ransburg Corp. v. Champion Spark Plug Co.,* 648 F.Supp. 1040, 1045 (N.D.Ill. 1986). RPC 1.7 states:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
(1) each affected client gives informed consent, confirmed in writing, after full disclosure and consultation, provided, however, that a public entity cannot consent to any such representation.  When the lawyer represents multiple clients in a single matter, the consultation shall include an explanation of the common representation to each affected client;

(2) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(3) the representation is not prohibited by law; and

(4) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

RPC 1.7.

Plaintiff also moves to disqualify Kenyon on grounds that Kenyon is in violation of RPC 1.10(a).  RPC 1.10(a) precludes a firm from representing a client if any lawyer representing the firm would ordinarily be precluded under either RPC 1.7 or RPC 1.9.  In the present case, if any Kenyon lawyer would be disqualified from the present case based on the Delaware litigation, all other Kenyon lawyers would also be disqualified and precluded from representing Defendant in the present matter.   RPC 1.10(a) states:

(a) When lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by RPC 1.7 or RPC 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm . . .

NJ RPC 1.10(a).

7

Defendant argues that there is no violation of RPC 1.7 or RPC 1.10(a) because Plaintiff does not have standing to sue for disqualification. Defendant argues that there is no standing because Plaintiff is neither a current nor a former client of Kenyon and therefore any representation of Defendant is not directly adverse to Plaintiff. Def.'s Br. at 3. This Court recognizes that a party does not have standing to bring a Motion to Disqualify based on a material conflict of interest unless the party is either a former or current client. "As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification." *In re Yarn Processing Patent Validity Litig.* 530 F.2d at 89. "To allow an unauthorized surrogate to champion the rights of the former client would allow that surrogate to use the conflict rules for his own purposes where a genuine conflict might not really exist." *Id.* at 90.

In addition to Plaintiff's lack of standing, this Court finds that there is no concurrent conflict because Kenyon is not currently representing both Plaintiff and Defendant in the matter before this Court or in another litigation.

Plaintiff argues that a concurrent conflict exists because Kenyon possesses confidential information which would "materially limit" Kenyon's ability to adequately represent Impax, thus violating RPC 1.7(a)2. Specifically, Plaintiff alleges that Kenyon's interest in precluding generic versions of Carbatrol® from reaching the market for Impax is adverse to Defendant's interest. The launch of a generic version of Carbatrol® by Defendant could be detrimental to the Shire/Impax PSA and may be harmful to Impax's financial interests. Pl.'s Br. at 5-6. This Court finds that a party's potential economic harm does not "materially limit" a law firm's obligation

to its client and is not grounds for concurrent conflict.  " . . . [T]here may not be a conflict if the simultaneous representation concerns . . . competing economic interests . . . Courts resist disqualification in these situations, because they want to deter abusive litigation tactics and support a client's freedom to choose a lawyer."  ABA Model RPC 1.7, cmt 6.

This Court further finds no concurrent conflict because Impax did not object to Kenyon's representation of Defendant.  A former client labors under the presumption that confidential information is shared with other partners in a law firm but that the information will not be used without the client's consent.  *In re Yarn Processing Patent Validity Litig.* 530 F.2d at 90. However, "[t]hese considerations do not apply where the former client does not object to the seemingly adverse representation."  *Id.*  This Court issued an Order to Show Cause to determine whether Impax sought to intervene in Plaintiff's Motion to Disqualify.  The order stated that Impax "Show Cause in writing . . . whether it shall seek leave to intervene in the Plaintiff's Cross-Motion to disqualify the law firm of Kenyon & Kenyon, LLP from acting as counsel for Defendant . . ."  (Docket Entry #70)  Impax responded that it "does not intend to seek leave to intervene in Plaintiff's Cross-Motion to disqualify the law firm of Kenyon & Kenyon."  (Docket Entry #70)  As such, this Court recognizes that even if it were to find concurrent conflict under RPC 1.7, there is no basis for disqualification given that Impax did not object to Kenyon's representation of Defendant.

This Court also questions the materiality of the confidential information exchanged between Kenyon and FHA during PSA settlement negotiations.  It is unlikely that either party revealed critical information to the opposition because Kenyon and FHA were acting as

adversaries in negotiating a settlement.  Illustrative of this unlikelihood is the circumstance that although Mr. Huag declares he disclosed confidential information regarding this present case and Carbatrol® (Huag Decl. at ¶ 6-7), Mr. McCabe has no recollection of any such discussions. (McCabe Decl. at ¶ 5.)

Finally, this Court finds in favor of Defendant's Motion for admission *pro hac vice*. Plaintiff filed the Motion to Disqualify in opposition to Defendant's Motion for admission *pro hac vice*.  However, during oral argument, Plaintiff conceded that if the motion to disqualify was denied, there would be no basis for opposing admission *pro hac vice* because the Kenyon lawyers were in good standing.

## III.  <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff's Motion to Disqualify the law firm of Kenyon & Kenyon, LLP, counsel for the Defendant in this matter is denied.  The Court finds that Plaintiff did not have standing to sue for disqualification.  The Court also finds that there was no concurrent conflict between Impax and Defendant and, consequently, no violation of RPC 1.7 or RPC 1.10.  Finally, the Court questions the materiality of confidential information exchanged between Kenyon and FHA.  Thus, the Court finds that Kenyon should be granted leave to appear *pro hac vice*.

An appropriate Order accompanies this Memorandum Opinion.  As a postscript, a separate Order filed July 25, 2006 will grant the present motion for admission *pro hac vice*.

/s/ *John J. Hughes*
**JOHN J.  HUGHES**
**UNITED STATES MAGISTRATE JUDGE**

Dated:  July 25, 2006

11